# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00076-CV

**Esperanza Andrade, in her official capacity as Secretary of State for the State of Texas, Appellant**

**v.**

**NAACP of Austin, Nelson Linder, Sonia Santana and David Van Os, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-06-002147, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent. The majority's affirmance of this case is not consistent with our obligation to dismiss when the pleadings and jurisdictional evidence affirmatively negate jurisdiction. The pleadings and jurisdictional evidence demonstrate that (1) appellees do not have standing to assert their claims because they have not suffered any actual or imminent injury, and (2) the Texas Secretary of State has sovereign immunity against appellees' claim of election code violations because appellees have failed to allege any action taken by the Secretary that would be outside her statutory authority. Therefore, I would reverse the district court's order denying the Secretary's plea to the jurisdiction and dismiss appellees' claims for lack of subject-matter jurisdiction.

We are required to consider the relevant evidence submitted by the parties with respect to the jurisdictional issues here. We must consider the jurisdictional evidence submitted

by the parties to resolve the jurisdictional issues raised "if a plea to the jurisdiction challenges the existence of jurisdictional facts." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Hendee v. Dewhurst*, 228 S.W.3d 354, 366-67 (Tex. App.—Austin 2007, pet. denied). The Secretary has challenged the existence of facts that would vest the court with jurisdiction.[1] Therefore, we must consider *both* the plaintiffs' pleadings construed in the plaintiffs' favor[2] and evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *City of Austin v. Leggett*, 257 S.W.3d 456, 461-62 (Tex. App.—Austin 2008, pet. denied).

### Standing

For a trial court to have authority to decide a case, the pleader must allege facts that affirmatively demonstrate the court's subject-matter jurisdiction to hear the cause. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Standing is a component of subject-matter jurisdiction. *See id.* at 443. To have standing, a plaintiff must be personally aggrieved. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). A plaintiff does

---

[1] The Secretary asserted in her plea to the jurisdiction that appellees "cannot show any injury from the use of these machines," failed to meet their burden to "plead and prove" violations of the Election Code, and "failed to demonstrate that they have been harmed."

[2] Contrary to the majority's application of the standard of review, we are not required to accept the plaintiff's jurisdictional pleadings as true when those pleadings are challenged. When the defendant challenges the existence of the plaintiff's pleaded jurisdictional facts, as the Secretary does here, we are required to consider the relevant evidence submitted by the parties to determine whether the pleaded jurisdictional facts are supported by the evidence. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). If a pleaded jurisdictional fact is conclusively negated by the evidence, we do not accept it as true. *See City of Austin v. Leggett*, 257 S.W.3d 456, 462 (Tex. App.—Austin 2008, pet. denied).

not lack standing simply because he cannot prevail on the merits of his claim. However, he may lack standing because his claim of injury is too slight for a court to afford redress. *Id.* at 305. The alleged injury must be "actual or imminent, not hypothetical." *Id.* at 304-05.

Appellees seek equitable relief that would require the voting machines used in Travis County to produce or maintain an independently verifiable paper record of the votes cast on the machine. To inquire into the merits of appellees' claims would involve a determination regarding whether the lack of such a paper record constitutes a constitutional or statutory violation.[3] Such inquiry would not necessarily turn on the inaccuracy or vulnerability of the existing machines absent a paper record. After all, the very existence of recount procedures in the election code—as well as appellees' insistence that a recount involve a verifiable paper record—is based on the proposition that, regardless of the technology used, the initial count might not be perfect. Moreover, appellees are not alleging that the Secretary erred in certifying the eSlate for any reason other than the absence of a paper record for recount and audit purposes. Thus, appellees do not frame their relief sought as an attempt to improve the reliability of an initial vote count, but rather as an attempt to increase the probability that any errors in an initial count may be corrected later.

To establish standing, however, rather than demonstrate a right to a paper record, appellees must demonstrate injury due to the lack of a paper record. The standing issue here is

---

[3] All three claims turn on this issue. In connection with the suffrage provisions of the Texas Constitution, appellees allege in their pleadings that "[o]nly with a paper verified system can a proper audit be performed on an election run by computerized voting machines." In connection with the election code provisions, appellees allege that "[t]he current system of paperless computerized voting in Travis County elections does not secure" a statutory right to a recount. Lastly, appellees allege that their "constitutional right to equal protection under the laws is violated by Defendants' use of paperless computerized voting machines."

distinct from the merits. We are not to adjudicate the merits of appellees' claims in deciding the issue of standing. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000); *In re Sullivan*, 157 S.W.3d 911, 920 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding). Appellees must allege an "actual or imminent, not hypothetical" injury from the current lack of an independently verifiable paper record associated with the eSlate machines. *See DaimlerChrysler Corp.*, 252 S.W.3d at 304-05. They would need to establish the actual or imminent harm by a flawed vote count that would otherwise be corrected if the sought-after paper record was produced in the Travis County voting procedure. Unlike an inquiry into the merits of the claims, this inquiry does involve the inaccuracy of initial vote counts by the existing machines in Travis County.

Appellees have alleged—and provided reports to the effect—that the eSlate machines are subject to technical failure and vulnerable to potential vote manipulation. However, these allegations and reports point to nothing more than the *possibility* that errors might occur with the Travis County voting procedure. Appellees included affidavit testimony in their summary judgment evidence asserting that the eSlate has "flaws that could be exploited," that any security measures and procedures could be "easily bypassed," and therefore, that "eSlate systems are not safe from fraudulent or unauthorized manipulation." Although appellees argue from these allegations that the threatened injuries are "far from hypothetical," they have not alleged an actual or imminent injury and have provided no evidence that any exploitation or manipulation of votes cast on the eSlates in Travis County has actually occurred or will occur. Nor have appellees alleged or

4

provided evidence that the eSlates have, in fact, injured appellees in their voting or appellee Van Os specifically in his campaign.[4]

In short, appellees' alleged injuries are hypothetical and speculative, rather than actual or imminent. *See Storino v. Borough of Point Pleasure Beach*, 322 F.3d 293, 297-98 (3d Cir. 2003) ("[O]ne cannot describe how the [plaintiffs] will be injured without beginning the explanation with the word 'if.'"). Appellees recognize this problem when they state, in their response to the Secretary's plea to the jurisdiction, that "*even without proof of actual injury*, Plaintiffs have provided documentation that Travis County's [eSlates] threaten serious harm in the absence of an independently verifiable paper trail." (Emphasis added.) Despite appellees' warnings of a possible "deprivation of one's vote," there is simply no allegation or proof of an actual or imminent deprivation.[5] Thus, we have nothing before us to indicate that a real controversy exists between the parties. *See Texas Ass'n of Bus.*, 852 S.W.2d at 446. An electronic voting machine's failure

---

[4] Appellees produced evidence of a small number of incidents in which issues had arisen with electronic voting machines used in elections outside of Travis County, and the majority relies on these incidents to conclude that appellees' evidence establishes standing. However, even if these incidents were evidence that the eSlates used in Travis County are likely to encounter the same problems, and that such problems could result in an incorrect vote count, this evidence is not relevant here, given that not one of the incidents identified by appellees (and referenced by the majority) involved an errant vote count that allegedly would have been avoided or corrected *with the use of an independently verifiable paper record*.

[5] Appellees argue that their inability to plead or offer evidence of an actual deprivation or manipulation of votes in Travis County "only highlights the problem," as the information needed to show or allege a deprivation is, appellees contend, "precisely the evidence Appellees charge the voting machine cannot fully produce." However, this assertion is without support in the record. For instance, appellees have not pointed to any election in Travis County in which results were questionable and yet a recount of votes cast on the eSlates failed to resolve any suspected error. In short, appellees have failed to allege or provide evidence that the lack of a paper record is the reason for appellees' lack of an allegation of actual injury.

to function properly could potentially be the subject of a constitutional, statutory, or regulatory inquiry. However, in this case, appellees have failed to sufficiently allege that the eSlate's potential for error has caused appellees any injury that is more than hypothetical or speculative with respect to the claims asserted. I would, therefore, conclude that appellees do not have standing to pursue their claims.[6]

***Sovereign Immunity***

Although appellees' lack of standing is dispositive as to all of their claims in this case, I will also address the Secretary's sovereign immunity defense, which is an independent basis for the dismissal of appellees' claim of election code violations. Sovereign immunity from suit, unless waived, generally protects the State of Texas, its agencies, and its officials from lawsuits. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). In determining whether to approve a voting machine for elections, the Secretary exercises a governmental function. *See* Tex. Elec. Code Ann. § 122.031(a) (West 2003) (Secretary of State responsible for approval of voting system equipment). A suit against a state officer *lawfully* exercising her governmental functions is considered a suit against the State and is barred by sovereign immunity absent legislative consent. *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied).

---

[6] Because none of the appellees has alleged an actual or imminent injury sufficient to confer standing, the NAACP of Austin does not have associational standing, *see Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (members must have standing to sue in their own right), and there is no need to reach the Secretary's additional argument that any injury suffered is not sufficiently particularized to appellees so as to confer standing, *see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) (plaintiff must allege some injury distinct from that sustained by the public at large).

Conversely, a private litigant generally does not need legislative permission to sue a state official for the official's violations of state law. *Federal Sign*, 951 S.W.2d at 404. Unlike a suit for damages based on the state official's discretionary acts, an action to determine or protect a private party's rights against a state official who has acted *without* legal or statutory authority is not a suit against the State that is barred by sovereign immunity. *See id.* The issue, then, is whether appellees' claims allege that the Secretary is acting outside her legal authority.

Our inquiry here is whether appellees have alleged a violation of a statute by the Secretary's approval of the paperless eSlate for use in elections.[7] If not, sovereign immunity bars their claim of statutory violations. In addressing the Secretary's arguments concerning sovereign immunity, we do not weigh the merits of appellees' statute-based claim concerning the voting machines. *See Brown*, 80 S.W.3d at 555. We determine only whether sovereign immunity bars that claim. We construe the relevant statutory provisions—those that appellees assert the Secretary has violated—in light of the facts pleaded and determine, as a matter of law, whether a violation is in fact alleged. *See Hendee*, 228 S.W.3d at 368.

Appellees allege that the Secretary's approval of a voting machine with no independently verifiable paper record was outside her legal authority because such approval did not comply with the Texas Election Code. It is the Secretary's statutory obligation to approve

---

[7] Appellees allege in their pleadings that the Secretary's approval of the eSlate was a violation of constitutional provisions regarding a secure election process, *see* Tex. Const. art. VI, § 4, free suffrage, *see id.* art. VI, § 2(c), and equal protection, *see id.* art. I, § 3, and seek declaratory and injunctive relief for these alleged constitutional violations. However, the Secretary directs her arguments concerning sovereign immunity only at appellees' claim alleging statutory violations, not at their constitutional claims.

7

voting equipment if and only if it meets the applicable statutory requirements in the election code. *See* Tex. Elec. Code Ann. § 122.038 (West Supp. 2008). Moreover, the Texas Legislature has provided that a person who is being harmed, or who is in danger of being harmed, by a violation of the election code is entitled to appropriate injunctive relief to prevent the violation from continuing. *See id.* § 273.081 (West 2003). To the extent appellees have, in fact, alleged a violation of the election code, their claim is not barred by sovereign immunity. *See Brown*, 80 S.W.3d at 555 (plaintiffs must plead facts that establish jurisdiction); *Hendee*, 228 S.W.3d at 366. The Secretary argues that appellees have failed to point to any provision of the election code with which the Secretary has not complied and, therefore, that appellees are not entitled to injunctive relief and there is no waiver of sovereign immunity for their statute-based claim.

First, appellees assert a violation of election code section 122.001(a)(11), which requires that any voting system used in an election be "capable of providing records from which the operation of the voting system may be audited." Tex. Elec. Code Ann. § 122.001(a)(11) (West Supp. 2008).[8] However, appellees do not allege that the eSlate is incapable of providing voting records by which an audit may be performed. Instead, appellees' complaint is that the voting records that *are* produced by the eSlate cannot be audited independently from the machine itself. According to appellees, if the eSlate reports a vote inaccurately, any records subsequently produced for auditing

---

[8] A voting system also may not be approved for use in an election by the Secretary unless it "operates safely, efficiently, and accurately and complies with the error rate standards of the voting system standards adopted by the Federal Election Commission," and "is safe from fraudulent or unauthorized manipulation." Tex. Elec. Code Ann. § 122.001(a)(3), (4) (West Supp. 2008). Appellees have not alleged that the eSlate fails to comply with these requirements. Rather, appellees allege that in the event the eSlate *does* record a ballot inaccurately or become subject to unauthorized manipulation, there will be no paper record to assist the detection of the inaccuracy or manipulation.

purposes will also be inaccurate. Appellees' complaint, then, is not that a voting machine without an independently verifiable paper record violates the language of section 122.001(a)(11), but that any records produced by such machine in compliance with section 122.001(a)(11) would result in a less effective audit. Regardless of whether appellees have raised a valid concern with respect to the record the eSlate machines produce, they have failed to allege a violation of election code section 122.001(a)(11).

Next, appellees assert a violation of election code section 211.001, which provides that a recount may be obtained in an election. *See id.* § 211.001 (West 2003). A "recount" is defined in chapter 211 of the election code as "the process conducted under this title for verifying the vote count in an election." *Id.* § 211.002(1) (West 2003). Appellees contend that absent a paper record, a voting machine cannot truly "verify" the vote count. Even assuming appellees are correct that paper print-outs would provide a superior method of auditing the recount of votes cast using the eSlate, I do not see how the inability to produce such paper print-outs rises to a violation of section 211.001. Section 211.001 provides that a recount must be available. It does not mandate the manner in which the recount must be made available. It is too much of a stretch to conclude that, upon failing to uncover every existing error, such a recount would necessarily fail to qualify as a "recount" for the purposes of section 211.001. Moreover, the term "recount" is limited, by definition, to the process as "conducted under this title." *See id.* While other sections of title 13 of the election code dictate the required procedures of a recount, *see generally id.* ch. 213 (West 2003 & Supp. 2008) (conduct of recount), with the presumed goal of an accurate recount, appellees have

9

not alleged a violation of any of these statutory requirements.[9]  Appellees' real complaint is not that no verification could take place, but that the verification process on a paperless eSlate is not adequate.  Again, regardless of whether appellees have raised a valid concern as a practical or policy matter, they have failed to allege a violation of election code section 211.001.

Lastly, appellees argue that the absence of a voter-verifiable paper record for the purpose of an audit is a violation of the election code's provisions for a *manual* recount.  A "manual recount" may be required if the person requesting the recount is dissatisfied with the program or equipment that would otherwise be used to conduct the recount.  *See id.* § 214.048 (West 2003).  Under the election code, "[i]f electronic voting system ballots are to be recounted manually, the original ballot, rather than the duplicate of the original ballot, shall be counted."  *Id.* § 214.049(e) (West 2003).  Appellees contend that because the eSlate does not produce a paper copy when a vote is originally entered, there is no "original ballot" and, therefore, the eSlate would not comply with election code section 214.049(e) in the event of a manual recount.

Appellees are unable to explain, however, how *any* method of transferring an electronic vote onto paper could result in an "original ballot" (although, under appellees' desired method, the voter would at least have the opportunity to confirm that the paper copy corresponds

---

[9]  During oral argument, appellees referenced section 213.016 of the election code, which governs who must or may be present during a printing of ballot images from a direct recording electronic voting machine for purposes of a recount.  *See id.* § 213.016 (West Supp. 2008).  Appellees indicated that this section demonstrated the eSlate's noncompliance with election code section 211.001 because the eSlate does not provide a paper print-out.  However, section 213.016 does not require either that an electronic voting machine be capable of printing the images or, even if it did, that the "printing of images" be accomplished by the paper print-out method proposed by appellees.

correctly with the votes originally entered). For instance, the election code expressly provides for the "printing of images of ballots cast using direct recording electronic voting machines for the purpose of a recount." *See id.* § 213.016 (West Supp. 2008). For appellees' contention to be correct that a voting machine without an independently verifiable paper record cannot produce an original ballot, even the printing of the image of a ballot as contemplated by section 213.016 would have to result in merely a duplicate ballot. It is a more reasonable interpretation that the term "original ballot" in section 214.049(e) is a reference to sections 127.125 and 127.126,[10] which provide for the duplication of ballots, including those from an electronic system, in the event that automatic counting equipment is used. *See id.* §§ 127.125, .126 (West 2003). In that context, the terms "duplicate ballot" and "original ballot" are used to distinguish any copies made for the specific purpose of counting the ballots from the original materials from which those copies were made—if, for example, an irregularity on the original materials would interfere with their automatic counting. *See id.* §§ 127.125(b), .126(c). The term "original ballot" is nowhere defined to refer only to a physical copy created, confirmed, or otherwise handled by the voter himself.[11] Therefore, the possibility that a recount must be done manually in accordance with the election code does not preclude the use of an electronic voting machine that does not produce a paper record prior to the original vote count. *See id.* § 127.130(c) (West Supp. 2008) ("The procedure for manual counting

---

[10] Subsection (d) of section 214.049 states specifically, in addressing the use of "original ballots" and "duplicate ballots" for counting, that "the ballots shall be processed in the manner prescribed by Sections 127.125 and 127.126." *Id.* § 214.049(d) (West 2003).

[11] If that were the case, there would be little reason ever to print the image of an electronic ballot as provided by section 213.016.

11

[of electronic system ballots] is the same as that for regular paper ballots *to the extent practicable*." (Emphasis added.)). Appellees have failed to allege a violation of election code section 214.049(e).

In sum, neither appellees nor the majority has identified a statute that may have been violated by the Secretary's approval of the paperless eSlate for use in elections. Having determined that appellees have failed to do so, I would conclude that appellees' claim of election code violations is barred by sovereign immunity. This conclusion is not an endorsement of any type of voting machine or procedure, but rather a recognition that approval of the eSlate for use in Travis County was within the discretion of the Secretary in accordance with the election code. *See id.* §§ 122.031(a) (voting system must be approved by Secretary of State), .032(b) (West 2003) (Secretary of State may prescribe specific standards for approval of voting systems). Sovereign immunity bars suits against a state officer who is lawfully exercising her governmental functions. Whether the election code *should* contain provisions requiring a voter-verifiable paper record, and the issues that should be taken into consideration—such as administrative costs, voter confidence, and a recount's effectiveness—before establishing such a requirement, remain questions for the legislature to decide.[12]

---

[12] It is noteworthy that legislation was introduced both in 2005 and in 2007 that would have required direct recording electronic voting machines used in an election to create a contemporaneous paper record, but was not enacted. *See* Tex. S.B. 1247, 80th Leg., R.S. (2007); Tex. S.B. 1006, 80th Leg., R.S. (2007); Tex. H.B. 3891, 80th Leg., R.S. (2007); Tex. H.B. 384, 80th Leg., R.S. (2007); Tex. H.B. 123, 80th Leg., R.S. (2007); Tex. H.B. 65, 80th Leg., R.S. (2007); Tex. S.B. 94, 79th Leg., R.S. (2005); Tex. H.B. 3083, 79th Leg., R.S. (2005); Tex. H.B. 2259, 79th Leg., R.S. (2005); Tex. H.B. 1289, 79th Leg., R.S. (2005); *see also* Tex. H.B. 166, 79th Leg., R.S. (2005) (would have required Secretary of State to "conduct a study to evaluate the feasibility and advisability of requiring a voter verified paper audit trail").

*Conclusion*

Appellees have not alleged or demonstrated an actual or imminent injury sufficient to establish standing to assert their claims against the Texas Secretary of State. In addition, because appellees have failed to identify any statute that the Secretary of State's alleged actions might violate, the Secretary of State has sovereign immunity against appellees' claim of statutory violations. Consequently, I would reverse the district court's order denying the Secretary of State's plea to the jurisdiction and dismiss appellees' claims for lack of subject-matter jurisdiction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Filed: April 10, 2009